RIVERA, J. (dissenting).
A lawyer failed to live up to prevailing professional standards, depriving his client of the fundamental right to appeal. In so doing, he violated the United States Supreme Court's holding from Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), under which lawyers must make objectively reasonable choices about pursuing appeals on their clients' behalf. The majority today nevertheless holds that counsel was not ineffective, a decision that runs afoul of United States Supreme Court precedent and state jurisprudence, and deprives defendant of fundamental due process rights.
The facts of this case are stark. After completing the "purely ministerial task" ( id. at 477, 120 S.Ct. 1029 ) of filing a one-page notice of appeal on defendant's behalf, counsel had no contact with defendant or his family. Counsel failed to comply with the Appellate Division Department's own rules, which dictate that counsel must advise a defendant in writing of the right to apply for poor person relief if indigent and submit the application on defendant's behalf if defendant so requests. The record demonstrates that counsel's representation falls below applicable professional standards adopted by the American Bar Association, New York State Bar Association, and National Legal Aid and Defender Association. As a consequence of counsel's failures, the Appellate Division dismissed defendant's appeal for failure to timely perfect, and thereafter denied his motions to reinstate as well as the instant petition for a writ of error coram nobis. Notwithstanding these facts, the majority concludes that counsel was not ineffective and that defendant is to blame for his own dire situation. I cannot agree. As we have made clear, "there is no justification for making the defendant suffer for his attorney's failing" ( People v. Montgomery, 24 N.Y.2d 130, 132, 299 N.Y.S.2d 156, 247 N.E.2d 130 [1969] ). Under well established statutory and case law, Appellate Division rules, and prevailing professional ***362 standards applicable then and now, counsel could not desert his client. Defendant's coram nobis petition should be granted and his appeal reinstated. Therefore, I dissent.
I.
Defendant was a 22-year-old construction worker with no criminal history when he was arrested on charges arising from a fight at a local restaurant, where he had stopped for dinner after work. Defendant maintained that he acted in self-defense when a group of seven men surrounded and attacked him, and that he fought back after one of the men tried to cut him. After using a knife to defend himself, defendant felt frightened and impulsively hid it in the restaurant before waiting for the police to arrive. A jury acquitted defendant of attempted murder and assault, but convicted him of fourth-degree criminal weapon possession and tampering with evidence.
At the sentencing hearing, neither the judge nor defendant's retained counsel mentioned defendant's appellate rights. In rebutting defendant's assertions that he **537 never received notice of an appeal nor information about his rights, the People offered only a court clerk's statement from the close of the proceeding: "Let the record reflect the defendant is being handed a notice of appeal. Paperwork to follow." The record before us does not contain this notice, only a document the People assert is the standard notice given to all Queens County defendants.
The day after sentencing, counsel filed a notice of appeal. Counsel admits he took no further steps to perfect the appeal and *1218 that he has no recollection of any post-sentencing contact with defendant or defendant's family. As he explained, "in [his] view, as retained counsel, [his] representation of [defendant] ended with the trial, sentenc[ing] and filing of the notice of appeal." According to counsel, "[i]t was understood that [he] was trial and not appellate counsel."
After defendant's release from prison, he was placed in deportation proceedings based on his conviction.[1] The appellate indigent defense counsel representing defendant in the immigration proceeding learned that, approximately four years earlier, the Appellate Division had granted the People's unopposed ***363 motion to dismiss defendant's appeal for failure to timely perfect.
Appellate counsel moved to reinstate the appeal. The supporting affidavit from defendant averred that defendant was unaware of his appellate rights and believed the case finished when he was released from prison. It stated that defendant did not remember receiving any notice of appeal, and that if he had known he could obtain a public defender he would have requested one to pursue his appeal. In appellate counsel's own affirmation, she described a conversation with defendant's mother in which the mother stated that she and her husband had paid for trial defense counsel but exhausted their finances and could not afford an attorney for an appeal. The mother also did not remember counsel mentioning an appeal, and, consequently, she too believed the conviction was "the end."
Appellate counsel also submitted a psychologist's evaluation in which an expert concluded that defendant has severe cognitive limitations. The expert explained that defendant's verbal intellectual functioning is in the "Extremely Low" range, his nonverbal cognitive functioning in the "Borderline" range, and that defendant has low, if any, literacy. The expert remarked that defendant's impulsive actions in the underlying incident-hiding the weapon while waiting for police-"would be consistent with a concrete and simplistic thinking style."[2]
The People took no position on the motion to reinstate the appeal. Nevertheless, the Appellate Division denied it. Appellate counsel then made a motion to reconsider "in light of the substantial rights at stake in this case," noting that "[defendant] will be deported as a result of a conviction that he has been unable to appeal through no fault of his own." The People opposed defendant's motion to reconsider on the basis that defendant had **538 "failed to meet his burden of showing that the Court misapplied relevant law or overlooked relevant facts."[3] Again, the Appellate Division denied the motion. ***364 Appellate counsel subsequently filed a petition for a writ of error coram nobis in the Appellate Division, alleging defense *1219 counsel was ineffective for failing to protect defendant's appellate rights. Counsel argued that defendant had a fifth-grade education and cognitive limitations, that trial counsel had done nothing after filing the notice of appeal, and that defendant's constitutional rights were violated as a result of trial counsel's failure to take basic steps to ensure defendant was able to perfect his appeal. The Appellate Division denied the petition without opinion (People v. Arjune, 138 A.D.3d 877, 28 N.Y.S.3d 329 [2d Dept.2016] ).
II.
The right to appeal is a fundamental right ( Montgomery, 24 N.Y.2d at 132, 299 N.Y.S.2d 156, 247 N.E.2d 130 ). Under New York law, every defendant has a statutory right to a first-tier appeal ( People v. West, 100 N.Y.2d 23, 759 N.Y.S.2d 437, 789 N.E.2d 615 [2003] ). It is the state's responsibility to "make that appeal more than a meaningless ritual" ( Evitts v. Lucey, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 [1985] [internal quotation marks omitted] ) "by affording a right to counsel on appeal" ( People v. Syville, 15 N.Y.3d 391, 397, 912 N.Y.S.2d 477, 938 N.E.2d 910 [2010], citing Evitts, 469 U.S. at 394, 105 S.Ct. 830 ). As this Court explained in People v. Syville, "[i]t follows that '[a] first appeal as of right ... is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney' " ( Syville, 15 N.Y.3d at 397, 912 N.Y.S.2d 477, 938 N.E.2d 910, quoting Evitts, 469 U.S. at 396, 105 S.Ct. 830 ). Thus, it also follows that where counsel's failures have deprived a defendant of this right to appeal under the normal procedural course, defendant may seek reinstatement of the appeal by writ of error coram nobis.
III.
Counsel's representation is measured against governing constitutional doctrine, statutory mandates, and basic rules of criminal practice, all of which aim to protect the client's appellate rights. Where, as here, counsel's representation is deficient for failing to comply with these authorities, counsel must be deemed ineffective.
A.
In Roe v. Flores-Ortega, the United States Supreme Court stated that where defendant claims counsel was ineffective for failing to file a notice of appeal, courts must determine "whether counsel in fact consulted with the defendant about an ***365 appeal" ( 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 [2000] ). The Court further expounded that "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes" (id. ). If counsel has failed to consult with a client, courts must ask whether such failure "itself constitutes deficient performance" (id. ). **539 The Court rejected a bright-line rule that counsel must always consult with defendant regarding an appeal, instead holding that the Federal Constitution mandates counsel make objectively reasonable choices, which must be assessed on a case-by-case basis. Yet, as the Court unanimously held, only in rare cases would counsel be effective absent client consultation. According to the Roe majority, "courts evaluating the reasonableness of counsel's performance ... will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal" ( id. at 481, 120 S.Ct. 1029 ), and the four concurring justices stated counsel "almost always" has this duty ( id. at 488, 120 S.Ct. 1029 [Breyer, J., concurring]; id. at 488, 120 S.Ct. 1029 [Souter, J., concurring *1220 in part and dissenting in part, joined by Ginsberg and Stevens, JJ.] ).
Further, as stated by the Court, apart from the federal constitution's mandates, "[s]tates are free to impose whatever specific rules they see fit to ensure that criminal defendants are well represented" ( id. at 479, 120 S.Ct. 1029 ). New York has imposed just such rules. If defense counsel ignores them, and defendant is thereby foreclosed from pursuing a direct appeal as of right, counsel has not complied with either the federal "objectively reasonable" or New York's less-stringent meaningful representation requirement.[4]
***366 B.
New York's four Appellate Division Departments have longstanding rules that "it shall be the duty of the counsel for the defendant, immediately after the pronouncement of sentence," to advise defendant in writing of the right to appeal, the time limitations involved, how to institute an appeal and obtain a transcript of trial testimony, and of the right to poor person relief ( 22 NYCRR 671.3 [a]; West, 100 N.Y.2d at 26, 759 N.Y.S.2d 437, 789 N.E.2d 615 ["the Appellate Divisions in 1964 promulgated rules that require assigned or retained counsel 'immediately after the pronouncement of sentence' to advise a defendant in writing of the right to appeal and the time limitations involved" (citations omitted) ] ).
The Second Department, the Court that denied defendant co-ram nobis relief, requires "written notice to [the] client advising [the client] of the right to appeal," which shall "also set forth ... the appellant's right, upon proof of [the client's] financial inability," to apply for "the following relief": "the assignment of counsel," "leave to prosecute the appeal as a poor person and to dispense with printing," and a copy of the trial transcript "without charge" ( 22 NYCRR 671.3 [b][3] ). In addition, "counsel shall also request the written instructions of [the] client," and upon **540 written notice of a desire to appeal or to apply for poor person relief, "counsel shall proceed promptly to do so" ( 22 NYCRR 671.3 [b][4] ). The Second Department is not alone in requiring that counsel ensure a client's indigency is no barrier to pursuing an appeal. The Fourth Department also mandates that counsel submit the application for poor person relief upon the client's request ( 22 NYCRR 1015.7 [a] ).[5]
The majority ignores the significance of counsel's violation of these rules, minimizing the Division Department standards as a basis for measuring the quality of counsel's *1221 representation. Rather than deny that the conduct here is deficient, we should recognize that defendant has been denied meaningful representation as a direct result of counsel's inaction. Apart from the injustice suffered by defendant, the holding here risks disincentivizing compliance with the rules. Instead, we should be conveying their centrality to criminal legal practice. ***367 C.
In addition to considering rules promulgated by the states, the Supreme Court looks to "the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the [Sixth] Amendment envisions," since the Amendment "refers simply to 'counsel,' [without] specifying [the] particular requirements of effective assistance" ( Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 [1984] ). Promoted by the bodies charged with supervising the practice of law, professional standards seek to lessen the institutional and structural obstacles that prevent defendants who want to appeal their criminal convictions from doing so. As relevant here, these standards address a "representation gap" between when the notice of appeal is filed and when the appeal is perfected. As the ABA commentary explains, "[t]his is a critical stage in a criminal prosecution, and no defendant should lack legal counsel during this period" (ABA Standards for Criminal Justice, Criminal Appeals, Transition from Trial Court to Appellate Court, standard 21-2.2[a] ). Furthermore, "[the ABA] standard, in stressing the continuing responsibility of the trial attorney, seeks to avoid the problem of a hiatus in legal representation during a critical period" (id. ).
The relevant New York State Bar Association standards state that "representation at the trial court stage means, at a minimum," not only "advising the client of the right to seek appointment of counsel and a free copy of the transcript" but also "applying for appointment of counsel and a free copy of the transcript if the client requests" (N.Y. St. Bar Assn., Revised Standards for Providing Mandated Representation § I-7[j][iii], [iv] [2015] ). The National Legal Aid and Defender Association similarly instructs trial counsel to "inform the defendant of [the] right to appeal," and "the action that must be taken to perfect an appeal" (Performance Guidelines for Criminal Defense Representation, guideline 9.2[a], [b] [2011] ). If the defendant wants to file an appeal but is unable to do so without the assistance of counsel, the attorney should file the notice and "take such other steps as are necessary to preserve the defendant's right to appeal" (id. ).
The American Bar Association makes clear that counsel cannot simply walk away from a client. Its standards specify that **541 trial counsel should explain the "meaning and consequences of the court's judgment and defendant's right of appeal," and "take ***368 whatever steps are necessary to protect the defendant's rights of appeal" (ABA Standards for Criminal Justice, Defense Function, standard 4-8.2[a], [b] [1993] ). Counsel must also "continue to represent a sentenced defendant until a decision has been made whether to appeal and, if an appeal is instituted, to serve the defendant at least until new counsel is substituted," unless the court allows counsel to withdraw (ABA Standards for Criminal Justice, Criminal Appeals, Transition from Trial Court to Appellate Court, standard 21-2.2[a] [1978] ).
The majority cites to Roe for the proposition that professional standards are mere guides that the Supreme Court meant to have limited relevance when analyzing whether defense counsel was ineffective *1222 (majority op. at 354 n. 5, 67 N.Y.S.3d at 531 n. 5, 89 N.E.3d at 1212 n. 5). This interpretation of Roe is incorrect. The Supreme Court's reference to the ABA standards in that case as guides must be understood in context. While the Court did not render its holding based on ABA standards, it went on to conclude that it would be the rare case in which counsel's constitutional duty could be met absent compliance with those very same standards.
The majority's misplaced focus on "guides" also takes that word out of context in light of other Supreme Court precedent. The Supreme Court has continuously treated professional standards as essential to the Court's effective assistance analysis. In Strickland, the Court held that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms" ( 466 U.S. at 688, 104 S.Ct. 2052 ). In Padilla v. Kentucky, the Supreme Court held that "[t]he first prong [of an ineffective assistance of counsel analysis]-constitutional deficiency-is necessarily linked to the practice and expectations of the legal community" ( 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 [2010] ). Citing rules promulgated by the National Legal Aid and Defender Association, the Department of Justice, and the American Bar Association, the Court held:
"[T]hese standards may be valuable measures of the prevailing professional norms of effective representation, especially as these standards have been adapted to deal with the intersection of modern criminal prosecutions and immigration law.
"The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation" ( Padilla, 559 U.S. at 367-368, 130 S.Ct. 1473 ; see also ***369 Chaidez v. United States, 568 U.S. 342, 352, 133 S.Ct. 1103, 185 L.Ed.2d 149 [2013] ["a court begins by evaluating the reasonableness of an attorney's conduct in light of professional norms"] ).
In New York, we similarly ask whether "attorney's conduct f[a]ll[s] below established professional norms" ( People v. Baret, 23 N.Y.3d 777, 783, 992 N.Y.S.2d 738, 16 N.E.3d 1216 [2014] ). Thus, when evaluating an attorney's representation, professional norms are at the center of the analysis. Roe is not to the contrary, as the majority implies, nor establishes that counsel here was other than ineffective.
IV.
In the case before us, counsel was ineffective and failed to provide meaningful representation to defendant, resulting in the loss of defendant's only appeal as of right. His representation fell below the federal standard discussed in Roe, as he did not make "objectively reasonable **542 choices" related to defendant's appellate rights ( Roe, 528 U.S. at 479, 120 S.Ct. 1029 ). Counsel failed to consult with defendant after sentencing about the right to appeal, and certainly did not "mak[e] a reasonable effort to discover the defendant's wishes" ( id. at 478, 120 S.Ct. 1029 ), since he had no contact with defendant or his family.
Counsel also violated his state-based duty when he broke the relevant Division Department rules. We have held that lack of compliance with Department rules that deprives a defendant of appellate counsel constitutes per se ineffective assistance of trial counsel (see People v. Brun, 15 N.Y.3d 875, 15 N.Y.3d 875, 938 N.E.2d 965 [2010] [defendant entitled to coram nobis relief where trial counsel failed to comply with Second Department's rule, thereby denying defendant representation upon People's appeal]; see also People v. Zanghi, 159 A.D.2d 1030, 1030, 552 N.Y.S.2d 463 [4th Dept.1990] [holding that, where a defendant claimed lack of oral consultation *1223 with counsel regarding right to appeal, the court "need not determine the truth of defendant's allegations because counsel failed to comply with our rule ( 22 NYCRR) 1022.11(a)" to inform defendants of appellate rights in writing: "(w)e remind counsel of the obligation under that rule"] ).
The People imply that counsel may have consulted with defendant before sentencing, and the majority claims that counsel's "carefully worded" affirmation should be read as confirmation that there was consultation (majority op. at 359, 67 N.Y.S.3d at 534, 89 N.E.3d at 1215). The affirmation, however, is revealing more for what it omits than for what it includes, and does not support an inference of effective representation. This "carefully worded" document ***370 says nothing about whether counsel's usual practice includes informing defendants about their right to appeal or how to request appellate indigent representation. While the People's motion to dismiss defendant's appeal and the court's order granting that motion were both sent to counsel's business address, counsel states he has no recollection of receiving the motion to dismiss the appeal and "carefully" makes no mention of whether he received the order. It is clear that he did not respond to either, nor even took action to inform defendant or confirm that defendant had chosen not to pursue an appeal.[6]
Additionally, the majority argues that a sentencing court's instructions may be "so clear and informative as to substitute for counsel's duty to consult," and in some cases "counsel might then reasonably decide that he need not repeat that information" (majority op. at 355, **543 67 N.Y.S.3d at 532, 89 N.E.3d at 1213, citing Roe, 528 U.S. at 479-480, 120 S.Ct. 1029 ). Nevertheless, the burden is on counsel, not the court, to ensure that defendant thoroughly understands the right to appeal and how to pursue it. While counsel may account for court-given information when analyzing what additional instruction defendants need, the responsibility of getting a defendant to that crucial state of understanding remains at all times with the lawyer. After all, unlike the court, counsel has the ability to discuss candidly defendant's options regarding an appeal.
"There is no substitute for the single-minded advocacy of appellate counsel" ( People v. Emmett, 25 N.Y.2d 354, 356, 306 N.Y.S.2d 433, 254 N.E.2d 744 [1969] [holding unacceptable an appellate tribunal reviewing a case without waiting for defense counsel to "make his own appraisal of that record or to submit a brief"] ). Courts and defense counsel have different roles and relationships with defendants.
***371 While courts purport neutrality, defense counsel's purpose is to advocate, a task that encompasses a wide array of responsibilities *1224 with the duty of loyalty at their core. Neither instructions from the court nor a standard form could supplant the trust and dependence inherent in such a relationship.
Here, the court did not discuss the right to appeal with defendant, and thus there was no information for counsel to build upon when ensuring defendant thoroughly understood his rights. The People and the majority rely on the form provided by the court clerk at the end of sentencing, but that document is not in the record and thus we cannot confirm its contents. Assuming the People's submission to this Court represents the form handed to defendant at the end of the original sentencing proceeding, it was wholly inadequate to advise him of his right to appeal.
For instructions regarding appeals and poor person relief, our case law has recognized the utility of notices-oral or written-providing clear, robust guidance, along with "ample notice" of rights ( West, 100 N.Y.2d at 28, 759 N.Y.S.2d 437, 789 N.E.2d 615 ). In West , where we upheld a form as providing adequate notice, the form instructed defendants to write to the Appellate Division requesting assigned counsel and described what a defendant must include in that letter. The notice given to defendants in West states:
"If you are without funds, after the notice of appeal has been filed, you must write to the Appellate Division requesting that counsel be assigned to you for the purpose of appeal. Send this letter to the Appellate Division, First Department, 27 Madison Avenue, New York, New York 10010.... [R]equest that you be granted permission to appeal upon the original record. You should mention you are without funds with which to retain counsel or to purchase a transcript of the proceedings. State fully your financial circumstances, explaining why you cannot afford to hire an attorney for an appeal or purchase a transcript of the proceedings. You must write this letter yourself" ( id. at 27, 759 N.Y.S.2d 437, 789 N.E.2d 615 ).[7]
In contrast, the standard notice the People rely on here lacks the clarity of the notice cited in West . The form simply states:
**544 ***372 "You have a right to appeal to the Appellate Division, Second Department, within thirty (30) days and, in addition, upon proof of your financial inability to retain counsel and to pay the cost and expenses of the appeal, you have the right to apply to the Appellate Division, Second Department, for the assignment of counsel and for leave to prosecute the appeal as a poor person and to dispense with printing.
"The Appellate Division, Second Department, is located at 25 Monroe Place, Brooklyn, New York 11201."
This notice neither informs defendant of how to establish proof of financial inability nor how to retain counsel or obtain a transcript utilizing poor person relief.
V.
It is noteworthy that the National Association of Criminal Defense Lawyers (NACDL), the nationwide professional bar association for public defenders and private criminal defense lawyers, submitted a brief in this case advocating for a rule by which "a lawyer who will not perfect the appeal ... must advise [the] client about how to obtain appellate counsel to do so *1225 and assist [the] client in preparing the necessary papers" (brief for NACDL, amicus curiae at 22). As the NACDL argues, "[t]o do otherwise presents an egregious risk to criminal defendants' fundamental right to counsel in their appeals as of right and undermines exactly what the ABA Standards are designed to prevent-'a hiatus in legal representation during a critical period' " (id. [citation omitted] ). Such a rule would provide "criminal defense attorneys, prosecutors, and judges with a precise guidepost to determine the point at which the duties of counsel end" (id. at 24-25) and would place a "minimal burden on criminal defense attorneys," since "[for lawyers] experienced with the criminal justice system, providing advice about these subjects and preparing the necessary papers is easily and quickly accomplished" (id. at 23).
On the other hand, the approach adopted by the majority today:
"place[s] an immense burden on defendants, especially uneducated, non-English-speaking defendants, who must (i) come to understand the right to appellate counsel, (ii) then understand that to receive appellate counsel requires papers demonstrating ***373 one's indigence and requesting the appointment of counsel, and (iii) then prepare such papers despite potential deficiencies in language and legal knowledge" (id. at 23-24).
Defendant's case evidences this point, and highlights the vulnerability of many who find themselves in such a position. Defendant was a novice to the criminal justice system: this was his first and remains his only criminal offense. In addition, he has a fifth-grade education, a cognitive impairment, and is barely literate.[8]
Unsurprisingly, other jurisdictions, both state and federal, have instituted protections similar to those of the ABA. "[M]ost of the [federal] courts of appeals require counsel who represented a defendant at trial to continue representation after the defendant is convicted, unless relieved by order of the court of appeals" (1 Lissa Griffin, Federal Criminal Appeals § 1:18 **545 [Mar. 2017] ).[9] A rule that ensures seamless representation from conviction to resolution of defendant's first-tier appeal as of right does not, as the majority claims, demand that trial counsel be responsible for an "indefinite period" after filing the notice of appeal (majority op. at 354, 67 N.Y.S.3d at 531, 89 N.E.3d at 1212). To the contrary, the rule assures the transition between trial and appeal progresses efficiently, effectively, and expeditiously. *1226 In contrast, the majority's holding widens the gap in representation and increases the chances of a defendant's loss of the ***374 right to appeal. The majority's approach also runs counter to sister federal and state jurisdictions, and the overwhelming consensus of the profession that criminal defendants and the justice system are best served by ensuring representation throughout the criminal appellate process. Other jurisdictions have found this type of rule workable, and, as discussed, the NACDL, whose members will be held to this high standard, champions the duty be imposed on defense counsel. The majority's decision today is an unfortunate step in the wrong direction.
VI.
The applicable legal standards forbid counsel from creating a gap in representation. Attorneys may not abandon defendants to navigate the criminal justice system alone without first and foremost ensuring that they understand their appellate rights and the steps necessary to exercise them, and, where necessary, assisting them in perfecting their appeals by obtaining substitute counsel. This rule ensures seamless representation from conviction to resolution of defendant's first-tier appeal as of right.
Here, counsel failed to provide meaningful representation. I would reverse and grant defendant's petition for a writ of error coram nobis, and remit to the Appellate Division so that defendant may pursue his appeal represented by competent appellate counsel.

Since defendant is a lawful permanent resident, his conviction constitutes the sole ground for separating him from his family and removing him from this country.

The People never refute that defendant has cognitive limitations, as the majority implies when referring to them as "purported" limitations (majority op. at 352, 67 N.Y.S.3d at 529, 89 N.E.3d at 1210). Moreover, it is unclear what the majority would hold sufficient evidence of such a disability for a writ of error coram nobis, if not an uncontradicted expert opinion (see majority op. at 361, 67 N.Y.S.3d at 535-36, 89 N.E.3d at 1216-17).

The People did not go so far as to make conclusions on the merits of defendant's motion, as the majority here does. Indeed, the People included a footnote in their affirmation in opposition to defendant's motion to reargue stating "[a]s before, the People take no position on defendant's argument on the merits of the motion that defendant seeks to reargue."

See People v. Honghirun, 29 N.Y.3d 284, 289, 56 N.Y.S.3d 275, 78 N.E.3d 804 (2017) ("The difference between the federal and state standards is that '[o]ur state standard ... offers greater protection than the federal test' because, 'under our State Constitution, even in the absence of a reasonable probability of a different outcome, inadequacy of counsel will still warrant reversal whenever a defendant is deprived of a fair trial' "), quoting People v. Caban, 5 N.Y.3d 143, 155-156, 800 N.Y.S.2d 70, 833 N.E.2d 213 [2005] ; People v. Stultz, 2 N.Y.3d 277, 283-284, 778 N.Y.S.2d 431, 810 N.E.2d 883 (2004) ("From time to time, we have referred to the Strickland standard and measured counsel's performance under it, but we have never applied it with such stringency as to require a defendant to show that, but for counsel's ineffectiveness, the outcome would probably have been different"); People v. Benevento, 91 N.Y.2d 708, 714, 674 N.Y.S.2d 629, 697 N.E.2d 584 (1998) (New York's claim of ineffectiveness is "ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case"); People v. Baldi, 54 N.Y.2d 137, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981).

The other Appellate Division Departments are even more protective: counsel's duty to file the notice of appeal is not conditioned on a written request (see 22 NYCRR 606.5 [First Department]; 821.2 [Third Department]; 1015.7 [Fourth Department] ).

The majority asserts that I have ignored that defendant bears a heavy burden to establish counsel denied him meaningful assistance (majority op. at 353-354, 67 N.Y.S.3d at 530-31, 89 N.E.3d at 1210-11). Notwithstanding the majority's claim, it is obvious from my references to the applicable legal mandates, and to the defendant's submissions in support of his petition for coram nobis relief, that my disagreement is not a difference of opinion as to the burden of production or proof. My disagreement is what to make of the record before us. Unlike the majority I do not consider defendant's claims "perfunctory" (majority op. at 357, 67 N.Y.S.3d at 533, 89 N.E.3d at 1214). Defendant does not rely solely on his own unsupported statements that his attorney failed him. Instead, he establishes by his counsel's own admissions that counsel did nothing other than file a notice of appeal and that he did not do more because he was not appellate counsel. Moreover, counsel has never asserted that he fulfilled his duties under the Appellate Division rules. This is powerful evidence in support of defendant's petition. If counsel's admission of his own failures is not enough, then no defendant, with or without cognitive limitations, can meet the standard adopted by the majority.

Notwithstanding the court's approval of the notice in West , reliance on that notice to educate defendants on their appellate rights may place such a burden on the exercise of those rights as to be unconstitutional. Such would be the case here, as a written notice handed over at sentencing without counsel's guidance would be of little use to defendant who is barely literate.

The Court has previously noted that those familiar with the system are less well placed to claim ignorance of the rules and procedures than those who have never navigated its intricacies (West, 100 N.Y.2d at 27, 759 N.Y.S.2d 437, 789 N.E.2d 615 [in which "(w)hile doing nothing in state court to pursue his appeal, defendant repeatedly attempted to bypass the state appellate process by filing petitions seeking federal habeas corpus relief"] ).

(See 2d Cir. Local Rule 4.1[a] [when a defendant in a criminal case seeks to appeal, "defendant's counsel, whether retained or appointed, is responsible for representing the defendant unless relieved by this court"]; 6th Cir. Local Rule 12[c][1] ["Trial counsel in criminal cases must continue representation of the defendant on appeal unless relieved by the court"]; 8th Cir. Local Rule 27B [a] ["Defendant's trial counsel, whether retained or appointed, shall represent the defendant on appeal, unless the Court of Appeals grants permission to withdraw"]; 10th Cir. Local Rule 46.3[A] ["Trial counsel must continue to represent the defendant until either the time for appeal has elapsed and no appeal has been taken or this court has relieved counsel of that duty"]; 11th Cir. Local Rules Addendum Four [d][2] ["If a party was represented in the district court by counsel appointed under the Act, such counsel shall be mindful of the obligation and responsibility to continue representation on appeal until either successor counsel is appointed under the Act or counsel is relieved by order of this court"].)