[54 NE3d 1145, 35 NYS3d 274]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WAYNE HENDERSON, Respondent.

Argued March 24, 2016; decided May 10, 2016

Richard A. Brown, District Attorney, Kew Gardens (*Christopher J. Blira-Koessler, Robert J. Masters* and *John M. Castellano* of counsel), for appellant.

*Lynn W.L. Fahey, Appellate Advocates*, New York City (*Leila Hull* of counsel), for respondent.

**OPINION OF THE COURT**

PIGOTT, J.

Defendant was convicted of attempted murder and two counts of assault in the first degree for repeatedly stabbing a 12-year-old victim. Defendant, who was 15 years old at the time, had known the victim for about a year and occasionally spent time with him in the company of defendant's 14-year-old girlfriend. One evening, defendant, the victim and defendant's girlfriend were smoking marijuana at a park when either the victim or defendant pulled a knife (the stories vary) and a struggle ensued. In the course of the struggle, defendant stabbed the victim 20 to 25 times, and either defendant or his girlfriend cut the victim's throat and carved an "X" into his cheek.[1]

The victim survived and testified against defendant at trial. He described the stabbing in great detail, explaining that defendant attacked him with a knife after defendant's girlfriend called the victim a "snitch" for telling his mother that the three had been using marijuana. Defendant raised a defense of justification and asserted that he lacked the requisite intent to kill or cause injury to the victim. Specifically, defendant maintained that he initially struggled with the victim in self-defense after the victim drew the knife, but that he eventually experienced a type of psychotic episode that caused him to black out. He claimed no memory of subsequent events.

[1]. Before trial, defendant's girlfriend pleaded guilty to one count of attempted murder in the second degree and two counts of assault in the second degree.

Defense counsel called an expert in child and adolescent psychiatry to offer an opinion on defendant's mental condition. After interviewing defendant and his mother, administering a psychiatric evaluation to defendant, reading the testimony of the lead detective in the case and reviewing defendant's medical records, previous psychiatric evaluations and educational reports, the expert concluded that defendant suffered from schizophreniform disorder—"a very severe psychiatric disorder" that causes a person to deteriorate mentally but does not require hospitalization. He observed that defendant had a history of behavioral problems and violent outbursts, likely related to the fact that his father and uncle were both stabbed to death when defendant was quite young, and that defendant had previously been committed to a residential psychiatric facility. According to the expert, defendant's disorder, coupled with his use of drugs and alcohol, compromised defendant's mental state on the night of the crime and prevented him from forming the requisite intent. He testified that the large number of stab wounds defendant inflicted and the random and violent nature of the attack were consistent with someone who had experienced a psychotic episode brought on by schizophreniform disorder and with defendant's testimony that he "blacked out."

On cross-examination, the expert acknowledged that he had not seen photographs of the victim's stab wounds or his emergency room records, but that he had reviewed the lead investigator's statements about the wounds and that defense counsel had informed him they "were all over the place." He also stated that he knew the victim had been stabbed multiple times in the interior and exterior jugular veins, chest, back and legs. When asked by the prosecutor whether he was aware that the People's theory of motive was that defendant stabbed the victim in retaliation for "snitching," the expert indicated that he was not and that such information "could and . . . could not necessarily change [his] opinion."

In summation, defense counsel argued that the photographs of the victim's wounds were irrelevant to the expert's opinion of defendant's mental state and there was no need to share them with him; she "hired him as a psychiatrist to evaluate [defendant], not to evaluate photos of injuries of the complainant." The prosecutor argued in summation that the expert's knowledge was incomplete and his diagnosis unsupportable, since he "didn't bother to look at the photos or was not given them." The jury convicted defendant of all counts.

Defendant challenged the judgment of conviction on direct appeal, arguing, among other things, that he received ineffective assistance of counsel based on his attorney's failure to provide the expert with photographs or hospital records of the victim's stab wounds and to inform the expert that the victim had "snitched" on defendant. The Appellate Division agreed and reversed, concluding that counsel's "so-called strategic decision to withhold information from the expert allowed the prosecutor to demonstrate to the jury that the expert was ill-informed" and "that the failure to disclose was intentional, and possibly misleading" (118 AD3d 1020, 1023 [2d Dept 2014]). Even if counsel had made a strategic decision to withhold the information, the Court held, "it was not consistent with the actions of a reasonably competent attorney" and that counsel would have been better off not calling an expert at all (*id.*). A Judge of this Court granted the People leave to appeal, and we now reverse.

■ The record as a whole reveals that defendant received meaningful representation (*see People v Baldi*, 54 NY2d 137, 147 [1981]). Defense counsel mounted a cogent, albeit unsuccessful, multipronged defense that highlighted defendant's psychological condition, drug and alcohol abuse and deeply troubled past. Counsel retained a reputable expert to evaluate defendant and provided that expert with a substantial amount of information, including defendant's medical and psychiatric records, educational reports and the testimony of the lead investigator in the case. Defense counsel's preparation of its expert was, in every respect, far superior to the witness preparation we deemed constitutionally deficient in *People v Bennett* (29 NY2d 462 [1972]) and *People v Oliveras* (21 NY3d 339 [2013]), in which counsel either failed to familiarize himself with the relevant facts and law regarding an insanity defense and called two experts who "testified that the [defendant] was sane" (*Bennett*, 29 NY2d at 466), or else "chose to forgo any investigation of the critical documents concerning defendant's mental condition, and instead, sought to present [an insanity] defense through the testimony of defendant's mother, an obviously biased witness" (*Oliveras*, 21 NY3d at 347).

Moreover, defendant has failed to "demonstrate the absence of strategic or other legitimate explanations" for counsel's alleged shortcomings (*see People v Benevento*, 91 NY2d 708, 712 [1998]). As defense counsel indicated in summation, she believed the pictures of the victim's stab wounds were poten-

tially inflammatory, unnecessary for the expert's evaluation of defendant's mental state and no more useful than the extensive information he had already been provided. She could have reached the same conclusion about the prosecution's theory of "snitching"—which counsel vigorously disputed.

Whatever the wisdom of counsel's strategy, we cannot say that it was inconsistent with the actions of a reasonably competent attorney. There is no evidence on this record of what information forensic experts ordinarily require in order to arrive at an expert conclusion, or what information the expert requested in this case. Nor is there any evidence of what information an attorney ordinarily would or should provide to such an expert, independently of the expert's request. Therefore, it is not clear that prevailing professional norms would have required counsel to provide the expert with photographs and hospital records of the victim's stab wounds or inform him of the prosecution's theory of the case (*cf. People v Rivera*, 71 NY2d 705, 709 [1988]).[2]

As we recently held in *People v Pavone*, defense counsel is not ineffective for failing to provide an expert witness with every piece of information that conceivably aids the expert in reaching his or her conclusion, even where, as here, the expert admits that such information would have been "useful and important" and the prosecutor highlights that admission (26 NY3d 629, 636, 647 [2015]). The decision whether to provide the expert with the omitted information was a decision that counsel was entitled to make and that we will not second-guess with the clarity of hindsight (*see Benevento*, 91 NY2d at 712; *People v Satterfield*, 66 NY2d 796, 799-800 [1985] ["It is not for this court to second-guess whether a course chosen by defendant's counsel was the best trial strategy, or even a good one, so long as defendant was afforded meaningful representation"]).

█ Finally, we reject defendant's contention that, by failing to provide the expert with photographs of the victim or the prosecution's theory of retaliation, counsel "dictate[d] the

---

2. We disagree with the Appellate Division's suggestion that it would have been a better strategy not to call an expert at all than to have the expert appear ill-informed. For one thing, courts should not be in the business of deciding, in hindsight, what would have been the best or a better trial strategy in any given case. For another, having an expert in this case was especially helpful to the defense, whose theory of diminished capacity hinged on defendant's testimony that he blacked out during the crime, and the expert was able to explain how that occurred.

formation of the expert's opinion" in violation of the ABA standards for ethical conduct (ABA Standards for Criminal Justice, Defense Function, standard 4-4.4 [a] [3d ed 1993]). Counsel provided the expert with an accurate description of the victim's wounds and gave him extensive information that both helped and hurt defendant's view of the case, including the opinions of two other experts whose conclusions contradicted his own. This is not a case in which defense counsel "wholly fail[ed] to provide an expert . . . any basis upon which to develop an opinion, or provide[d] an expert with incorrect information" (*Pavone*, 26 NY3d at 647).

Accordingly, the order of the Appellate Division should be reversed and the case remitted to that Court for consideration of the facts and issues raised but not determined on the appeal to that Court.

Chief Judge DiFIORE and Judges RIVERA, ABDUS-SALAAM, STEIN, FAHEY and GARCIA concur.

Order reversed and case remitted to the Appellate Division, Second Department, for consideration of the facts and issues raised but not determined on the appeal to that Court.