This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------
No. 66
The People &c.,
          Respondent,
     v.,
          Appellant.


          Patricia Pazner, for appellant.
          Deborah E. Wassel, for respondent.


STEIN, J.:

          In this child sex abuse case, defendant has not

established that he was denied the effective assistance of

counsel.  He has not demonstrated the absence of strategic or

legitimate explanations for counsel's failure to object to the

admission of evidence that the victim disclosed the abuse three

- 1 -

years after it ceased, and then again four years after her initial disclosure.  Therefore, we affirm.

I.

Defendant was charged in an indictment with course of sexual conduct against a child in the first and second degrees after the then 17-year-old victim, a member of defendant's extended family, revealed to a school counselor that defendant had molested her repeatedly when she was between the ages of 5 and 10 years old.  Defendant acknowledges that the defense at trial was that the disclosure to the school counselor was a recent fabrication, but argues that the defense was not adopted until summations and was inexplicable given the testimony that the victim had disclosed the abuse to three friends approximately four years earlier.  However, the record reflects that defense counsel's strategy of portraying the victim as a troubled teen who fabricated the allegations was evident as early as voir dire and continued throughout trial.  For example, during voir dire, counsel informed the jury that "the case [was] about" the "significant amount of time that passed before [the victim] told anybody about this," and asked the jurors to determine whether the victim was a troubled teen based on all the evidence. Counsel later confirmed that this was the strategy that he had chosen to employ from the beginning of trial, stating during a sidebar, "[a]s you know from my voir dire, your Honor, one of my arguments is that this young lady is a troubled teen."

Counsel further laid the groundwork for a recent fabrication defense in his opening statement, asserting that the victim waited seven years to "say something . . . [t]hat's a long time," and explaining that, even if the jury believed the victim's claim that she previously disclosed the abuse to her friends, she waited an additional four years to tell an adult. Counsel asserted that the victim would give details of the abuse and urged the jury to compare her different statements in analyzing the victim's credibility. Counsel also acknowledged that the People would present expert testimony explaining "delay in outcry" and that delay did not mean that the abuse did not occur, but argued that the delay did not necessarily mean that the victim's claims were true.[1]

The victim's parents testified that, during the relevant time frame, they frequently brought the victim to defendant's apartment for babysitting. The victim testified that, beginning in 1999, when she was about five years old and for a period of about five years thereafter, defendant repeatedly touched her genitals both over and under her clothing, and made her touch his genitals over and under his clothes. Defendant also had the victim get on top of him and "ride" him while clothed, performed oral sex on her three times and twice made her watch pornography in his bedroom. According to the victim, the abuse stopped in 2004, during the summer before the victim

---

[1]  The expert did so testify.

entered fifth grade, after she twice threatened to call the police.

The victim testified that the first time she told anyone that defendant had molested her was about three years after the abuse stopped, when she disclosed to three friends. The victim next disclosed the abuse to her school counselor in February 2011. Defense counsel elicited from the victim that she told the school counselor about the prior abuse because she was having nightmares and her grades were dropping and that, two months before the disclosure, the victim wrote in a journal she kept for her English class that she heard "voices in my head [that] tell me to do bad things," including hurting herself. At another sidebar addressing the permissible scope of cross-examination on the journal, counsel argued that the victim's statement in the journal went "right back to the heart of our case[,] . . . [t]his is a troubled young lady."

The school counselor testified that the victim revealed that "somebody was touching her when she was young . . . [o]n her breast and vagina. She also shared that she was in certain bedrooms and oral sex was performed on her."[2] The court twice instructed the jury during the school counselor's recitation of the victim's statements that the evidence was not admitted for its truth, but on the issue of outcry and the victim's state of

---

[2] Upon hearing this, the counselor contacted family services, the police and the victim's mother.

mind.  Defense counsel elicited that the school counselor had been asked to meet with the victim due to "issues [the victim] was having in school" and to address the victim's statements in her journal.

The detective who was assigned to the victim's case testified that the victim told him that, from 1999 to 2004, she had, "on numerous occasions . . . been sexually abused in the nature ranging from being touched to being made to touch a man's penis."  The detective further testified, without objection, that he spoke to one of the victim's friends and confirmed that the victim had previously disclosed the abuse to the friend.  During cross-examination, counsel asked the detective whether the victim gave him details about the abuse -- which involved her being touched under her clothes but did not include her claim that defendant performed oral sex on her -- and the detective answered "yes."

In summation, counsel emphasized the victim's statement in her journal that the voices in her head tell her to do bad things, which was written only two months before the victim's disclosure to the counselor.  He argued that it was not believable that the previous disclosure to friends was ever made, noting that the People failed to corroborate the disclosure by calling any of the victim's friends and that the victim's friends never told anyone else about the abuse.  Counsel also urged the jury to focus on the length of the delay between the abuse and

the first disclosure to an adult, as well as the problems in the victim's life occurring at the time. Counsel argued that the journal was "proof of just how troubled this young lady really was at that time" and also pointed to numerous inconsistencies in the victim's testimony.

During jury instructions, the court charged the jury with respect to prompt outcry, including that "[e]vidence that the complaining witness either made prompt disclosure . . . or evidence that she failed to do so may be considered by you as bearing upon the witness's credibility." The jury found defendant guilty of first-degree course of sexual conduct against a child. The Appellate Division affirmed (133 AD3d 882 [2d Dept 2015]) and a Judge of this Court granted defendant leave to appeal (27 NY3d 965 [2016]).

II.

As recently explained in People v Gross, "[o]n an ineffective assistance of counsel claim under the Sixth Amendment to the United States Constitution, a defendant must demonstrate that (1) his or her attorney committed errors so egregious that he or she did not function as counsel within the meaning of the United States Constitution, and (2) that counsel's deficient performance actually prejudiced the defendant" (26 NY3d 689, 693 [2016]). In contrast, "New York's constitutional requirement of effective assistance of counsel is met when 'the evidence, the law, and the circumstances of a particular case, viewed in

totality and as of the time of the representation, reveal that
the attorney provided meaningful representation'" (id., quoting
People v Benevento, 91 NY2d 708, 712 [1998]).  The difference
between the federal and state standards is that "our state
standard . . . offers greater protection than the federal test"
because, "under our State Constitution, even in the absence of a
reasonable probability of a different outcome, inadequacy of
counsel will still warrant reversal whenever a defendant is
deprived of a fair trial" (People v Caban, 5 NY3d 143, 156
[2005]).  Under both standards, "the defendant must overcome the
presumption that, under the circumstances, the challenged action
might be considered sound trial strategy" (Strickland v
Washington, 466 US 668, 689 [1984][internal quotation marks and
citation omitted]).  In other words, a defendant must
"'demonstrate the absence of strategic or other legitimate
explanations' for counsel's alleged shortcomings" (People v
Henderson, 27 NY3d 509, 513 [2016], quoting Benevento, 91 NY2d at
712).

Here, defendant argues that counsel's failure to object
to the testimony regarding the victim's disclosures must have
arisen from his ignorance or misunderstanding of the law on
prompt outcry testimony and, thus, cannot be considered a matter
of strategy.  We disagree.  While "it is generally improper to
introduce testimony that the witness had previously made prior
consistent statements" to bolster the witness's credibility, the

use of prior consistent statements is permitted to demonstrate a prompt outcry, rebut a charge of recent fabrication, or "to assist in 'explaining the investigative process and completing the narrative of events leading to defendant's arrest'" (Gross, 26 NY3d at 694-695, quoting People v Ludwig, 24 NY3d 221, 231 [2014]).  Indeed, in People v Ludwig, "we acknowledged that 'New York courts have routinely recognized that nonspecific testimony about [a] child-victim's reports of sexual abuse [does] not constitute improper bolstering [when] offered for the relevant, nonhearsay purpose of explaining the investigative process'" (Gross, 26 NY3d at 695, quoting Ludwig, 24 NY3d at 231 [internal quotation marks omitted]).

A conclusion that the fact of the victim's disclosures herein to the school counselor and detective would likely be admissible to "complete the narrative" was "consistent with [a conclusion that] a reasonably competent attorney" could make (People v Oathout, 21 NY3d 127, 128 [2013] [internal quotation marks omitted]).  That is, although defendant was convicted prior to our decisions in Ludwig and Gross, counsel was not ineffective for failure to make a motion that had little chance of success (see Caban, 5 NY3d at 152).  Instead of objecting to that testimony, counsel strategically chose to use the evidence to defendant's advantage by exploring the substance of, and the circumstances surrounding, the disclosure in depth to support the defense of recent fabrication.  Moreover, while it is undisputed

that the elicitation on cross-examination of testimony regarding the victim's troubled mental state at the time she disclosed the abuse to the school counselor essentially introduced a "motive to fabricate" and thereby opened the door to admission of the previous disclosure to her friends (see People v Rosario, 17 NY3d 501, 513 [2011]), counsel argued to the jury that they should not believe that the earlier disclosure ever occurred for various reasons.  Further, in cross-examination of the victim about the three-year disclosure, and of the school counselor and detective about the seven-year disclosure, counsel was able to demonstrate inconsistencies in the disclosures.

Counsel's strategy -- in support of his recent fabrication defense -- of using the evidence surrounding the disclosures and the inconsistencies between the victim's various statements was evident beginning with voir dire and consistently followed throughout trial.  That counsel's strategy was ultimately unsuccessful does not alter our analysis because, as this Court has repeatedly stated, "a reviewing court must avoid confusing 'true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis'[;] . . . counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective" (People v Benevento, 91 NY2d at 712, quoting People v Baldi, 54 NY2d 137, 146 [1981]).

On this record, where the victim's credibility was the

primary issue at trial, and given that "[t]he test is reasonable competence, not perfect representation" (People v Pavone, 26 NY3d 629, 647 [2015] [internal quotation marks and citation omitted]), defendant has not established that counsel was ineffective. Accordingly, the order of the Appellate Division should be affirmed.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order affirmed. Opinion by Judge Stein. Chief Judge DiFiore and Judges Rivera, Fahey, Garcia and Wilson concur.

Decided June 8, 2017