People v Hymes (2019 NY Slip Op 05441)





People v Hymes


2019 NY Slip Op 05441


Decided on July 5, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 5, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, DEJOSEPH, CURRAN, AND WINSLOW, JJ.


139 KA 17-00401

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JUSTIN HYMES, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (NATHANIEL V. RILEY OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (NICOLE K. INTSCHERT OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Thomas J. Miller, J.), rendered April 29, 2016. The judgment convicted defendant, upon a jury verdict, of predatory sexual assault against a child and endangering the welfare of a child. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of predatory sexual assault against a child (Penal Law § 130.96) and endangering the welfare of a child (§ 260.10 [1]). Defendant contends that he was denied his Antommarchi right to be present during material sidebar conferences (see People v Antommarchi, 80 NY2d 247, 250 [1992], rearg denied 81 NY2d 759 [1992]). County Court advised defendant at the start of jury selection that he had an absolute right to be present at the sidebar conferences, and defendant said that he would invoke that right. Nevertheless, he did not accompany his counsel during the first sidebar conference and, when the court asked defense counsel if defendant wished to be present, counsel stated that defendant waived his right to be present. The record shows that defendant was not present during some additional sidebar conferences. It is well settled that "a lawyer may waive the Antommarchi right of his or her client" (People v Flinn, 22 NY3d 599, 602 [2014], rearg denied 23 NY3d 940 [2014]; see People v Velasquez, 1 NY3d 44, 49 [2003]). Furthermore, defendant also implicitly waived those rights by choosing not to accompany his counsel during the sidebar conferences after being advised that he had the absolute right to attend them (see Flinn, 22 NY3d at 601; People v Williams, 15 NY3d 739, 740 [2010]; People v Tortorice, 136 AD3d 1284, 1284-1285 [4th Dept 2016], lv denied 27 NY3d 1140 [2016]). We therefore conclude that defendant's contention is without merit.
Defendant next contends that the victim testified regarding an uncharged crime and that the court should have given an appropriate Molineux limiting instruction. Specifically, defendant contends that the first four counts of the indictment alleged anal and oral sexual conduct and not any vaginal contact and, therefore, when the victim testified that she awoke one time to find defendant "on top of [her]," she gave testimony of an uncharged crime. Contrary to defendant's contention, the testimony was not Molineux evidence but, rather, was testimony that defendant engaged in sexual contact with the victim to support the fifth count of the indictment charging endangering the welfare of a child. Defendant's further contention that admission of that evidence resulted in the jury convicting him of endangering the welfare of a child based on an uncharged theory is also without merit. For that charge, the indictment stated that defendant "engaged in a course of conduct which included sexual contact with [the victim]." The bill of particulars did not narrow the scope of the alleged sexual contact with respect to that charge (cf. People v Graves, 136 AD3d 1347, 1349-1350 [4th Dept 2016], lv denied 27 NY3d 1069 [2016]; see generally People v Bradley, 154 AD3d 1279, 1280 [4th Dept 2017]). The language in the indictment and bill of particulars was therefore broad enough to encompass all the sexual contact [*2]as testified to by the victim.
We reject defendant's contention that the court erred in failing to suppress his statements. Viewing "the totality of the circumstances surrounding the confession," we agree with the court that defendant's statements were voluntary and not the product of coercion (People v Deitz, 148 AD3d 1653, 1653 [4th Dept 2017], lv denied 29 NY3d 1125 [2017] [internal quotation marks omitted]; see generally People v Thomas, 22 NY3d 629, 641-642 [2014]). Further, any alleged deception was not "so fundamentally unfair as to deny [defendant] due process" (People v Clyburn-Dawson, 128 AD3d 1350, 1351 [4th Dept 2015], lv denied 26 NY3d 966 [2015] [internal quotation marks omitted]).
Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we reject defendant's contention that the evidence is legally insufficient (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Further, upon viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
Defendant further contends that certain testimony was improperly admitted because it bolstered the victim's testimony regarding the abuse, and the court failed to issue an appropriate limiting instruction. By way of background, defendant was accused of engaging in anal sexual conduct with the victim in 2009. Shortly after it occurred, the victim disclosed the abuse to her aunt, who did not believe her. In 2014, the victim disclosed the abuse to a school social worker/counselor but, when interviewed by the police, the victim denied that any abuse occurred. In 2015, however, the victim reported to the police that the incident had occurred, and defendant was arrested.
The People moved in limine to introduce the 2009 disclosure to the aunt on the ground that such testimony was admissible as a prompt outcry. In a letter decision, the court ruled that it would allow such testimony. The court further held that, with respect to disclosures that the victim made in 2014, the People could elicit testimony "about the timing of the [victim's] revelations for the purpose of explaining the events kicking off the investigative process that led to the charges against the defendant." Finally, the court held that, "[i]f the aunt testifies in that regard," she would not be allowed to recite precise details of the disclosure, but could explain what actions she took as a result. The court indicated that it would issue an appropriate limiting instruction regarding "[t]he aunt's testimony on that subject" (emphases added). At the start of the trial, defense counsel informed the court that he recalled that the 2014 disclosure was made at the victim's school, and the aunt was made aware of that disclosure. Defense counsel asked for clarification as to the court's final reference to the aunt's testimony, and the court responded that it had been referencing the 2014 disclosure.
At trial, the victim testified that defendant sexually abused her in the spring of 2009 and that she immediately told her aunt about the abuse. After the victim testified to another incident where defendant had sexually abused her that occurred around that same time, the prosecutor asked the victim if she told anyone "after that about that time." The victim responded affirmatively, that she told "my Aunt. I told [the school social worker/counselor]. I told a Detective. I told my Dad, my Step-Mom, and then my two Step-Sisters." It appeared from subsequent testimony that the disclosure to the school social worker/counselor was made in 2014. The victim explained that, after telling the school social worker/counselor, she met with a police officer and someone from Child Protective Services. She further testified, however, that because her aunt told her not to "run[ her] mouth," the victim "took [the allegation] back" when she talked to the officer in 2014. The aunt testified that the victim disclosed the abuse to her in the spring of 2009, and the aunt spoke with detectives in 2014 and 2015 regarding the victim's allegations. The detective who interviewed the victim in 2015 also testified at trial and explained that the victim made certain disclosures to him. Notably, there was no testimony from the victim, her aunt, or the detective regarding the specifics of the victim's disclosures.
Defendant first contends that the court erred in permitting the People to elicit testimony regarding the victim's disclosures of abuse. We reject that contention. "While it is generally improper to introduce testimony that the witness had previously made prior consistent statements to bolster the witness's credibility, the use of prior consistent statements is permitted to [*3]demonstrate a prompt outcry, rebut a charge of recent fabrication, or to assist in explaining the investigative process and completing the narrative of events leading to the defendant's arrest" (People v Honghirun, 29 NY3d 284, 289 [2017] [internal quotation marks omitted]). With respect to the testimony regarding the victim's disclosure in 2009, that was admissible under the prompt outcry exception (see People v McDaniel, 81 NY2d 10, 16 [1993]). With respect to the testimony regarding the victim's disclosures in 2014 and 2015, that was admissible to explain the investigative process and complete the narrative of the events leading to defendant's arrest (see People v Ludwig, 24 NY3d 221, 231-232 [2014]; People v Cullen, 24 NY3d 1014, 1016 [2014]). The testimony of the victim, her aunt, and the detective therefore fell squarely within the above exceptions and did not constitute improper bolstering.
Although defendant recognizes the above exceptions to the rule against improper bolstering, he contends that the People indicated that they would introduce testimony regarding the 2009 disclosure only, and he was unfairly surprised by the testimony of the 2014 and 2015 disclosures. He further contends that the People went beyond the court ruling by introducing testimony regarding the 2015 disclosures. Those contentions are raised for the first time on appeal and are therefore unpreserved for our review (see CPL 470.05 [2]). In any event, we conclude that they are without merit. The court in its letter ruling clearly stated that any disclosures in 2014 would be admissible to explain the investigative process, and we therefore disagree with defendant that he was unfairly surprised by the testimony regarding those disclosures. The 2015 disclosure arguably went beyond the ruling of the court, but that testimony was connected with the testimony regarding the 2014 disclosure and also relevant and admissible to explain the investigative process (see Ludwig, 24 NY3d at 231-232).
Defendant next contends that the court erred in failing to give a limiting instruction with respect to the 2014 and 2015 disclosures despite the court's promise to do so. We conclude that defendant's contention is not preserved for our review inasmuch as he never objected to the court's failure to give that instruction (see CPL 470.05 [2]; People v De La Cruz, 44 AD3d 346, 347-348 [1st Dept 2007], lv denied 9 NY3d 1005 [2007]; People v Hentley, 155 AD2d 392, 394 [1st Dept 1989], lv denied 75 NY2d 919 [1990]). We decline to exercise our power to review the contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]; see generally People v Williams, 107 AD3d 1516, 1516 [4th Dept 2013], lv denied 21 NY3d 1047 [2013]).
Defendant also contends that defense counsel was ineffective in failing to object to the alleged bolstering testimony and failing to object to the court's failure to give a limiting instruction with respect to the 2014 and 2015 disclosures. To the extent that defendant contends that he was denied effective assistance of counsel based on counsel's failure to object to the testimony, we conclude that it is without merit inasmuch as any such objection would have been unsuccessful (see People v Reed, 151 AD3d 1821, 1822 [4th Dept 2017], lv denied 30 NY3d 952 [2017]). As explained above, the testimony did not constitute improper bolstering. With respect to counsel's failure to object to the court's failure to give a limiting instruction, that also did not constitute ineffective assistance of counsel (see People v Gross, 26 NY3d 689, 696 [2016]). It is well settled that "a defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings" (Honghirun, 29 NY3d at 289 [internal quotation marks omitted]). There were only two witnesses who gave testimony regarding the victim's disclosures in 2014 and 2015, and neither gave specifics about what was said to them. After hearing their testimony, counsel may have reasonably believed that a limiting instruction was not needed inasmuch as their testimony was only to show how the investigation began, and counsel could have concluded that the jury did not need a specific instruction on that. In rejecting our reliance upon Gross, the dissent concludes that there could have been no tactical basis for counsel's alleged error, citing People v Jarvis (113 AD3d 1058, 1059-1060 [4th Dept 2014], affd 25 NY3d 968 [2015]), a case where the defense counsel successfully sought to preclude testimony yet failed to object when it was later introduced. In this case, however, although the court indicated that it would issue a limiting instruction on the testimony, counsel had never requested such a limiting instruction in the first instance. In addition, defense counsel was not successful in his opposition to the People's motion seeking to introduce that testimony. Viewing the evidence, the law, and the circumstances of this case in their totality at the time of the representation, we conclude that counsel provided meaningful representation (see generally People v Baldi, 54 NY2d 137, 147 [1981]).
Finally, the sentence is not unduly harsh or severe.
All concur except Smith, J.P., and Curran, J., who dissent and vote to reverse in accordance with the following memorandum: We conclude that defendant was deprived of a fair trial when County Court, despite stating that it would give a limiting instruction regarding the proper use of certain testimony that would otherwise constitute bolstering, failed to provide that instruction. We further conclude that defendant was deprived of effective assistance of counsel by his attorney's failure to object to that error. Therefore, we respectfully dissent.
Initially, we agree with the majority's resolution of defendant's contentions concerning People v Antommarchi (80 NY2d 247 [1992], rearg denied 81 NY2d 759 [1992]) and People v Molineux (168 NY 264 [1901]); his assertion that he was convicted of endangering the welfare of a child based on an uncharged theory; and his challenges to the admissibility of his statements to the police, to the sufficiency and weight of the evidence, and to the severity of his sentence. Nevertheless, we also conclude that, inasmuch as the evidence is not overwhelming and is based almost entirely on the testimony of the victim, who admittedly recanted several times and gave numerous versions of the events, a new trial is required due to the court's failure to give an instruction regarding the proper use of the bolstering testimony and counsel's failure to object to that error.
Prior to trial, the People moved in limine for permission to introduce evidence that the victim reported an incident of sexual contact with defendant to her aunt in 2009, and that she again disclosed the incident in 2014. The court concluded that the People could introduce evidence that the victim made a prompt complaint in 2009 if they laid a proper foundation establishing that the complaint was made at the first suitable opportunity, and that they could introduce evidence that the victim reported the contact in 2014 for the sole purpose of establishing how the investigative process began at that time. The court indicated that it would provide an appropriate limiting instruction if the evidence was introduced.
At trial, the People introduced evidence that the victim reported the sexual contact to her aunt in 2009 and to several other people at various times in 2014 and 2015. Nevertheless, the court did not give a limiting instruction either when the testimony was given or at the end of the case. Although we agree with the majority that defendant failed to preserve for our review his contention that the court erred in failing to give the promised charge, we conclude that defendant was deprived of a fair trial by that error, and we would exercise our power to review that contention as a matter of discretion in the interest of justice.
It is well settled that nonspecific testimony about a child victim's report of sexual abuse does not " improperly bolster[ ] the victim's version of events [when] admitted not for its truth but for the narrow purpose of explaining an officer's actions and the sequence of events in an investigation, and the testimony is accompanied by an appropriate limiting instruction' " (People v Ludwig, 24 NY3d 221, 231-232 [2014]). Here, however, the prosecutor repeatedly commented in summation that the testimony should be taken as evidence of the truth of the victim's testimony, stating at one point that the victim "retelling that story over and over corroborates her [story]." Although defendant does not argue that the prosecutor made improper comments during summation, those comments exacerbated the prejudice caused by the court's failure to give the promised limiting instruction, and they demonstrate that the evidence was not utilized for the appropriate limited purpose. Thus, we conclude "that the court erred in failing to issue a limiting instruction to the jury when the evidence was admitted and during the final jury charge, to minimize the prejudicial effect of the admission of the evidence" (People v Presha, 83 AD3d 1406, 1407 [4th Dept 2011]). "In a case such as this, where the finding of guilt rests squarely on the jury's assessment of the credibility of the victim . . . , we cannot say that the error was harmless and did not affect the jury's verdict" (People v Greene, 306 AD2d 639, 643 [3d Dept 2003], lv denied 100 NY2d 594 [2003]; see Presha, 83 AD3d at 1407). The majority's reliance upon Ludwig and People v Honghirun (29 NY3d 284 [2017]) is unavailing inasmuch as, in both of those cases, the court gave limiting instructions regarding the use of the testimony. Indeed, in Honghirun, the court "twice instructed the jury during the [witness's] recitation of the victim's statements that the evidence was not admitted for its truth" (29 NY3d at 287-288), and gave further limiting instructions in the final charge (id. at 288).
We also agree with defendant's additional contention that he was deprived of effective [*4]assistance by his attorney's failure to object the court's failure to give the promised limiting instruction. The majority concludes that defense counsel's failure to preserve that issue does not rise to the level of ineffective assistance, citing People v Gross (26 NY3d 689, 696 [2016]). We respectfully disagree. In Gross, the majority of the Court of Appeals concluded that defense counsel may not have objected to the prosecutor's comments on the evidence for tactical reasons. Here, there was no possible tactical basis for "defense counsel's inexplicable failure to object" when the court failed to give the promised limiting instruction (People v Jarvis, 113 AD3d 1058, 1059 [4th Dept 2014], affd 25 NY3d 968 [2015]).
We would therefore reverse the judgment and grant a new trial on counts one and five of the indictment.
Entered: July 5, 2019
Mark W. Bennett
Clerk of the Court