People v Jordan (2020 NY Slip Op 01817)





People v Jordan


2020 NY Slip Op 01817


Decided on March 13, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, CURRAN, WINSLOW, AND BANNISTER, JJ.


1218 KA 17-01348

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JAMES JORDAN, DEFENDANT-APPELLANT. 






THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (DEBORAH K. JESSEY OF COUNSEL), FOR DEFENDANT-APPELLANT.
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (MICHAEL J. HILLERY OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Erie County (M. William Boller, A.J.), rendered July 7, 2017. The judgment convicted defendant upon a jury verdict of assault in the first degree, assault in the third degree and criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, assault in the first degree (Penal Law § 120.10 [3]). The charges arose after defendant fired a gun into a crowd emerging from a hookah lounge following a fight that had broken out in the lounge. One man was shot in the foot and another man was shot in the neck.
Contrary to defendant's contention, the conviction is supported by legally sufficient evidence of his identity as the shooter (see People v Danielson, 9 NY3d 342, 349 [2007]; see generally People v Contes, 60 NY2d 620, 621 [1983]). The trial evidence included security camera footage showing defendant and his group arriving at the lounge. The footage depicted the clothing that defendant was wearing, which witnesses were able to identify, as well as the distinctive blue and white shirt worn by one of defendant's friends, who provoked the fight that led to the evacuation of the lounge. Security camera footage did not show the faces of the people leaving the lounge but did show a man wearing the same clothing as defendant discharging a gun and, at the same time, being approached, touched, and led from the scene by a second man. Although the second man was not wearing a shirt, cell phone video footage of the event showed the same man removing a blue and white shirt, and police later collected the distinctive shirt worn by defendant's friend from the scene of the shooting. Finally, defendant's flight to South Carolina by bus the next day is evidence of consciousness of guilt (see People v Velazquez, 100 AD3d 1504, 1506 [4th Dept 2012], lv denied 20 NY3d 1015 [2013]; see generally People v Yazum, 13 NY2d 302, 304-305 [1963], rearg denied 15 NY2d 679 [1964]). Viewing the evidence in the light most favorable to the People, we conclude that "there is a valid line of reasoning and permissible inferences from which a rational jury could have" determined that defendant was the shooter (Danielson, 9 NY3d at 349 [internal quotation marks omitted]; see generally Contes, 60 NY2d at 621). Further, viewing the evidence in light of the elements of the crimes as charged to the jury (see Danielson, 9 NY3d at 349), we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
We reject defendant's contention that certain Facebook images of defendant and other people were not properly authenticated and that Supreme Court therefore erred in admitting them in evidence. The authenticity of each image was established by the testimony of a witness who had personal knowledge of the people in the images and who verified that the images "accurately represented the subject matter depicted" (People v Byrnes, 33 NY2d 343, 347 [1974]; cf. People v Wells, 161 AD3d 1200, 1200 [2d Dept 2018], lv denied 32 NY3d 1009 [2018]; see generally People v Price, 29 NY3d 472, 477-480 [2017]).
Defendant further contends that the court erred in permitting a police detective to give testimony identifying defendant as the shooter in the security camera footage and drawing certain inferences from that footage (see generally People v Graham, 174 AD3d 1486, 1487-1488 [4th Dept 2019], lv denied 34 NY3d 1016 [2019]; People v Carroll, 300 AD2d 911, 916 [3d Dept 2002], lv denied 99 NY2d 626 [2003]). To the extent that defendant's contention is preserved for our review (see CPL 470.05 [2]), we conclude that any error in the admission of that testimony is harmless (see People v Crimmins, 36 NY2d 230, 241-242 [1975]; Graham, 174 AD3d at 1488). We note that the court sustained at least one objection from defense counsel after a nonresponsive answer from the police detective and issued a curative instruction with respect to that answer, which the jury is presumed to have followed (see People v VanDyne, 63 AD3d 1681, 1682 [4th Dept 2009], lv denied 14 NY3d 845 [2010]; People v Comfort, 30 AD3d 1069, 1070 [4th Dept 2006], lv denied 7 NY3d 787 [2006]; see also People v Davis, 58 NY2d 1102, 1104 [1983]). We also note that the court's final instructions to the jury alleviated much of the prejudice of the police detective's testimony of which defendant now complains. The court instructed the jury that they were the sole and exclusive judges of the facts, that the testimony of police officers should not automatically be accepted, and that defendant's identity was a disputed issue in the case. The court also instructed the jury how it should evaluate the accuracy of identification testimony. Again, the jury is presumed to have followed those instructions (see People v Collins, 167 AD3d 1493, 1497 [4th Dept 2018], lv denied 32 NY3d 1202 [2019]; People v Bibbes, 98 AD3d 1267, 1269-1270 [4th Dept 2012], amended on rearg 100 AD3d 1473 [4th Dept 2012], lv denied 20 NY3d 931 [2012]; see also Davis, 58 NY2d at 1104).
Defendant's contention concerning the violation of his right to confront a witness against him is not preserved for our review (see CPL 470.05 [2]), and we decline to exercise our power to review it as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]). Given the senseless nature of the crimes, we conclude that the sentence is not unduly harsh or severe. We have examined defendant's remaining contention and conclude that it does not warrant reversal or modification of the judgment.
Entered: March 13, 2020
Mark W. Bennett
Clerk of the Court