People v Mosley (2021 NY Slip Op 07393)





People v Mosley


2021 NY Slip Op 07393


Decided on December 23, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 23, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, CURRAN, TROUTMAN, AND DEJOSEPH, JJ.


924 KA 18-01882

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
FAROD MOSLEY, DEFENDANT-APPELLANT. (APPEAL NO. 1.) 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (NATHANIEL V. RILEY OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JESSICA N. CARBONE OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Stephen J. Dougherty, J.), rendered February 8, 2018. The judgment convicted defendant, upon a jury verdict, of criminal possession of a weapon in the second degree (two counts) and reckless endangerment in the first degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b]; [3]) and one count of reckless endangerment in the first degree (§ 120.25), arising from an incident in which a gun was fired several times at an occupied motor vehicle. We affirm.
We reject defendant's contention that, at trial, County Court erred in allowing a police detective to identify him in a surveillance video. "A lay witness may give an opinion concerning the identity of a person depicted in a surveillance [video] if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the [video] than is the jury" (People v Graham, 174 AD3d 1486, 1487-1488 [4th Dept 2019], lv denied 34 NY3d 1016 [2019] [internal quotation marks omitted]; see People v Russell, 165 AD2d 327, 336 [2d Dept 1991], affd 79 NY2d 1024 [1992]). We conclude that the court did not abuse its discretion (see Russell, 79 NY2d at 1025) in permitting that testimony because the People presented evidence establishing that the police detective was familiar with defendant based on numerous prior interactions with defendant over the course of more than a year, during which time the police detective observed defendant's appearance, body language, demeanor, and gait. Thus, there "was some basis for concluding that the [police detective] was more likely to identify defendant correctly than was the jury" (People v Gambale, 158 AD3d 1051, 1053 [4th Dept 2018], lv denied 31 NY3d 1081 [2018]; see People v Trowell, 172 AD3d 1112, 1113 [2d Dept 2019], lv denied 33 NY3d 1074 [2019]). Also, the court properly concluded that the police detective would be more likely to identify defendant in the surveillance video, "[n]otwithstanding the fact that defendant[] had not changed [his] appearance subsequent to having been videotaped," because of the "poor quality of the surveillance [video]" (People v Pinkston, 169 AD3d 520, 521 [1st Dept 2019], lv denied 33 NY3d 1107 [2019]). Thus, the police detective's testimony "served to aid the jury in making an independent assessment regarding whether the man in the [video] was indeed the defendant" (People v Montanez, 135 AD3d 528, 528 [1st Dept 2016], lv denied 27 NY3d 1072 [2016]). We also note that the court properly instructed the jurors that, inter alia, the police detective's testimony should not automatically be accepted and that the identity of the shooter was a question of fact for the jury, thereby emphasizing to the jury that the police detective's "opinion was merely to aid their decision based upon all the facts and circumstances of the case and that they were entitled to accept or reject it" (Gambale, 158 AD3d at 1053).
Defendant failed to preserve for our review his contention that the People committed a Rosario violation when they failed to collect and disclose to defendant a second surveillance video purportedly depicting the shooting (see CPL 470.05 [2]; People v Page, 105 AD3d 1380, 1383 [4th Dept 2013], lv denied 23 NY3d 1023 [2014]). In any event, that contention lacks merit. The second surveillance video does not constitute Rosario material inasmuch as it was not "a statement made by a prosecution witness" (Page, 105 AD3d at 1383 [internal quotation marks omitted]).
Defendant further contends that the court should have given the jury an adverse inference instruction based on the People's failure to preserve the second surveillance video. That contention is also unpreserved because defendant did not request such an instruction and did not object to the court's ultimate charge on that ground (see People v Brown, 181 AD3d 1301, 1304 [4th Dept 2020], lv denied 35 NY3d 1064 [2020]; People v Williams, 38 AD3d 577, 578 [2d Dept 2007], lv denied 9 NY3d 883 [2007]; see generally People v Washington, 173 AD3d 1644, 1645 [4th Dept 2019], lv denied 34 NY3d 985 [2019]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Contrary to defendant's further contention, the conviction is supported by legally sufficient evidence of his identity as the shooter (see generally People v Danielson, 9 NY3d 342, 349 [2007]; People v Contes, 60 NY2d 620, 621 [1983]). The evidence at trial included surveillance video footage depicting a person, identified by the police detective as defendant, running into the frame, brandishing a gun, and discharging the gun multiple times in the direction of the victim's vehicle, which had just exited the frame (see People v Fletcher, 192 AD3d 1667, 1667 [4th Dept 2021], lv denied 37 NY3d 964 [2021]; People v Jordan, 181 AD3d 1248, 1249 [4th Dept 2020], lv denied 35 NY3d 1067 [2020]). Viewing the evidence in the light most favorable to the People, we conclude that "there is a valid line of reasoning and permissible inferences from which a rational jury could have" determined that defendant was the shooter (Danielson, 9 NY3d at 349 [internal quotation marks omitted]; see generally Contes, 60 NY2d at 621). We further conclude that, viewing the evidence in light of the elements of the crimes as charged to the jury (see Danielson, 9 NY3d at 349), the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Although a different verdict would not have been unreasonable given the low quality of the surveillance video footage that purportedly depicted defendant (see Danielson, 9 NY3d at 348), we cannot conclude that the jury "failed to give the evidence the weight it should be accorded" (Bleakley, 69 NY2d at 495).
We conclude that the court did not abuse its discretion in refusing to grant defendant youthful offender status (see People v Simpson, 182 AD3d 1046, 1047 [4th Dept 2020], lv denied 35 NY3d 1049 [2020]; People v Lewis, 128 AD3d 1400, 1400 [4th Dept 2015], lv denied 25 NY3d 1203 [2015]; see generally People v Minemier, 29 NY3d 414, 421 [2017]). In addition, having reviewed the applicable factors pertinent to a youthful offender determination (see People v Keith B.J., 158 AD3d 1160, 1160 [4th Dept 2018]), we decline to exercise our interest of justice jurisdiction to adjudicate him a youthful offender (see Simpson, 182 AD3d at 1047; Lewis, 128 AD3d at 1400-1401; cf. Keith B.J., 158 AD3d at 1161).
Finally, we reject defendant's contention that the sentence is unduly harsh and severe.
All concur except Whalen, P.J., and Lindley, J., who dissent and vote to reverse in accordance with the following memorandum: We respectfully dissent. Initially, we conclude that County Court abused its discretion in allowing a police detective to identify defendant in a surveillance video depicting the shooting for which defendant was arrested (see generally People v Russell, 79 NY2d 1024, 1025 [1992]). During voir dire, the police detective testified that he interacted with defendant at a police station, where he "sat in rooms" with defendant, "walked side by side" with him on occasion, and viewed photographs of him. The police detective could recall, however, only a single day on which these interactions took place and conceded that he did not recall ever having a "street interaction[]" with defendant. Thus, contrary to the determination of the majority, there was an insufficient basis on which to conclude that the police detective was more likely than the jury to correctly identify the person in the poor quality surveillance video as defendant (cf. People v Gambale, 158 AD3d 1051, 1053 [4th Dept 2018], lv denied 31 NY3d 1081 [2018]), particularly because there was no evidence that defendant's appearance had changed since the surveillance video was recorded (cf. People v Sanchez, 95 AD3d 241, 249-250 [1st Dept 2012], affd 21 NY3d 216 [2013]). Further, in an apparent effort to [*2]curb any prejudice to defendant from testimony that he had previously been the subject of a police investigation, the court permitted the police detective to testify that he had known defendant for a "long period of time" and "talked to him on numerous occasions." As a result, the police detective testified before the jury that he had known defendant for approximately a year and a half from his work canvassing in the neighborhood where the shooting occurred, during which time he became familiar with defendant's body language. That testimony overstated the police detective's familiarity with defendant and thus deprived the jury of the ability to independently assess the police detective's basis for making the identification and determine whether to accept or reject that testimony (see generally Gambale, 158 AD3d at 1053). Inasmuch as the People conceded at oral argument, correctly in our opinion after viewing the surveillance video, that the jury would have been unable to identify defendant as the shooter from the video in the absence of the police detective's identification testimony, we cannot conclude that this error was harmless.
Moreover, we conclude that the verdict is against the weight of the evidence even with the identification testimony from the police detective. The only evidence that defendant was the shooter is the blurry surveillance video, therefore an acquittal would have been reasonable (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). The police detective conceded that he was not familiar with what defendant looked like on the date of the shooting. When asked in front of the jury whether he could identify the shooter depicted on the video, the police detective testified that, based "on previously viewing the video and being able to zoom in and stuff, . . . that's [defendant] in the video." He explained that he had previously been able to identify the individual as defendant based on the individual's build and the shape of his nose. The police detective acknowledged that video stills of the individual's face were too blurry to allow for facial features to be discerned and, although he testified that the facial features were clearer when the surveillance video was allowed to play, the jury was never shown how the police detective was able to "zoom in" such that any further detail could be discerned. Thus, we conclude that the jury "failed to give the [identification] evidence the weight it should be accorded" (id.). We would therefore reverse the judgment and dismiss the indictment. 
Entered: December 23, 2021
Ann Dillon Flynn
Clerk of the Court