People v Mastin (2024 NY Slip Op 05699)

People v Mastin

2024 NY Slip Op 05699

Decided on November 15, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 15, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, MONTOUR, GREENWOOD, AND HANNAH, JJ.

717 KA 20-00656

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MONTEK MASTIN, DEFENDANT-APPELLANT. (APPEAL NO. 1.) 

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (LEAH N. FARWELL OF COUNSEL), FOR DEFENDANT-APPELLANT. 
MICHAEL J. KEANE, ACTING DISTRICT ATTORNEY, BUFFALO (DANIEL J. PUNCH OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Erie County Court (Kenneth F. Case, J.), rendered March 4, 2020. The judgment convicted defendant, upon a jury verdict, of murder in the second degree, and criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals in appeal No. 1 from a judgment convicting him, upon a jury verdict, of murder in the second degree (Penal Law § 125.25 [1]) and criminal possession of a weapon in the second degree (§ 265.03 [3]), arising from the fatal shooting of the victim as he sat in the driver's seat of a vehicle in the parking lot of a gas station. Defendant appeals in appeal No. 2 from a judgment convicting him, upon his plea of guilty, of two counts of assault in the second degree (§ 120.05 [3]), arising from his assault of two law enforcement officers while in jail during the pendency of the charges in appeal No. 1. We affirm in each appeal.
Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's contention in appeal No. 1 that the verdict is against the weight of the evidence with respect to his identity as the shooter (see People v Thomas, 176 AD3d 1639, 1640-1641 [4th Dept 2019], lv denied 34 NY3d 1082 [2019]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Even assuming, arguendo, that a different verdict would not have been unreasonable, it cannot be said that the jury failed to give the evidence the weight it should be accorded (see generally Bleakley, 69 NY2d at 495). The People introduced evidence at trial, including video footage from numerous sources, establishing, among other things, that the shooter exited a minivan registered to codefendant after it followed the victim's vehicle to the area of the gas station, eventually approached the victim's vehicle and repeatedly shot the victim through the open driver's side window, and then returned to the waiting minivan and rode away from the scene; that the minivan was tracked to a shopping mall shortly after the shooting and surveillance video therefrom recorded a person wearing clothing matching that worn by the operator of the minivan accompanied by a person whose appearance and clothing matched both photos of defendant on social media and the video footage of the shooter; and that defendant and codefendant frequently posted identical photos as well as photos of each other or of themselves together on social media prior to the incident and had exchanged 39 telephone calls in the two weeks before the incident (see People v Young, 209 AD3d 1278, 1279-1280 [4th Dept 2022], lv denied 39 NY3d 988 [2022]; People v Jordan, 181 AD3d 1248, 1249 [4th Dept 2020], lv denied 35 NY3d 1067 [2020]; Thomas, 176 AD3d at 1640-1641).
We also reject defendant's contention in appeal No. 1 that he was denied effective assistance of counsel. Where, as here, a defendant contends that they received ineffective assistance of counsel under both the Federal and New York State Constitutions, "we evaluate the [*2]claim using the state standard, which affords greater protection than its federal counterpart" (People v Conway, 148 AD3d 1739, 1741 [4th Dept 2017], lv denied 29 NY3d 1077 [2017]; see People v Stultz, 2 NY3d 277, 282 [2004], rearg denied 3 NY3d 702 [2004]). Under the state standard, "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (People v Baldi, 54 NY2d 137, 147 [1981]; see People v Benevento, 91 NY2d 708, 712 [1998]). "[O]ur Constitution 'guarantees the accused a fair trial, not necessarily a perfect one' " (People v Cummings, 16 NY3d 784, 785 [2011], cert denied 565 US 862 [2011], quoting Benevento, 91 NY2d at 712), and thus "[t]o prevail on a claim of ineffective assistance, [a] defendant[ ] must demonstrate that they were deprived of a fair trial by less than meaningful representation; a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice" (People v Flores, 84 NY2d 184, 187 [1994]; see Benevento, 91 NY2d at 713). " '[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy' " (People v Honghirun, 29 NY3d 284, 289 [2017]). "In other words, [the] defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings" (id. [internal quotation marks omitted]). "However, a reviewing court must be careful not to 'second-guess' counsel, or assess counsel's performance 'with the clarity of hindsight,' effectively substituting its own judgment of the best approach to a given case" (People v Pavone, 26 NY3d 629, 647 [2015], quoting Benevento, 91 NY2d at 712; see Honghirun, 29 NY3d at 290).
Here, we conclude that defendant has not "sustain[ed] his burden to establish that his attorney[s] 'failed to provide meaningful representation' that compromised his 'right to a fair trial' " (Pavone, 26 NY3d at 647; see Honghirun, 29 NY3d at 290-291). It is undisputed that defendant's attorneys pursued a reasonable trial strategy of seeking to cast doubt on defendant's identity as the shooter by, among other things, showing that people other than defendant had a motive to kill the victim. In furtherance of that strategy, one of defendant's attorneys (hereinafter, defense counsel) established during cross-examination of the lead detective that another man, as retribution for the victim's cooperation with the police in an unrelated robbery investigation that resulted in the man serving jail time, had demanded a significant amount of money and marihuana from the victim, with the threat that otherwise the man was going to have the victim killed. The victim had refused the man's demand and told the man to "take it in blood," which meant that the victim had challenged the man to follow through with his threat. Then, in a question reasonably designed to cast doubt upon the thoroughness of the investigation into people other than defendant who had a motive to kill the victim, defense counsel asked the lead detective whether the police had, in fact, investigated the man in connection with the homicide. The lead detective answered, however, that the police had investigated the man's role in the homicide and, as a result thereof, the police believed that the man had put a bounty on the victim and that "someone collected it." Now faced with the prospect that, if left unaddressed, the jury might infer that defendant had collected on the bounty, defense counsel—as he later explained to County Court outside the presence of the jury—made a tactical decision to "readjust" his cross-examination of the lead detective by inquiring whether the police had any proof as to who collected the purported bounty or knew whether the bounty allegation was true. The lead detective responded that he had such proof inasmuch as defendant had posted on social media the day after the murder a photo depicting stacks of money. Although defense counsel's question opened the door to the admission of the social media post, which the court had previously ruled inadmissible as too speculative, defense counsel reasonably opted to introduce the social media post as a defense exhibit after the court ruled that it was now going to "allow the People to offer that exhibit" and thereafter strategically sought to undermine the testimony concerning the police investigation by exacting admissions from the lead detective that he did not know who took the photo, when the photo was taken, or whose money was depicted in the photo, that the money could have been obtained from unrelated sources such as gambling winnings or repayment of a debt, and that no such money was located when the police executed a search warrant of defendant's home (see Honghirun, 29 NY3d at 290; People v Tarver, 202 AD3d 1368, 1370 [3d Dept 2022], lv denied 39 NY3d 1114 [2023]; People v Smith, 192 AD3d 1648, 1649 [4th Dept 2021], lv denied 37 NY3d 968 [2021]; People v Banks, 181 AD3d 973, 976-977 [3d Dept 2020], lv denied 35 NY3d 1025 [2020]). Thus, although defense counsel's cross-examination of the lead detective opened the door to the admission of the social media post, "[v]iewed objectively, the transcript . . . reveal[s] the existence of a trial strategy that might well have been pursued by a reasonably competent attorney [and] . . . [i]t is not for this [C]ourt to [*3]second-guess whether a course chosen by defendant's counsel was the best trial strategy, or even a good one, so long as defendant was afforded meaningful representation" (People v Satterfield, 66 NY2d 796, 799-800 [1985]; see People v Delp, 156 AD3d 1450, 1451 [4th Dept 2017], lv denied 31 NY3d 983 [2018]).
Moreover, even assuming, arguendo, that defense counsel erred in opening the door to the admission of the social media post and then introducing it in evidence as a defense exhibit without requesting a specific limiting instruction from the court, we conclude that defense counsel's conduct did not constitute "egregious and prejudicial error such that defendant did not receive a fair trial" (Benevento, 91 NY2d at 713 [internal quotation marks omitted]; see People v Meyers, 182 AD3d 1037, 1039 [4th Dept 2020], lv denied 35 NY3d 1028 [2020]). Any prejudice was minimized by defense counsel's remaining cross-examination of the lead detective and his summation, both of which effectively portrayed the People's theory of motive as speculative, along with the court's general instruction during its charge that the jury was not to speculate in evaluating the evidence and reaching a verdict (see People v Turley, 130 AD3d 1574, 1575-1576 [4th Dept 2015], lv denied 26 NY3d 972 [2015], reconsideration denied 26 NY3d 1093 [2015]). Even if defendant did not receive error-free representation, "[t]he test is 'reasonable competence, not perfect representation' " (People v Oathout, 21 NY3d 127, 128 [2013]) and, here, viewing the evidence, the law, and the circumstances of this case as a whole and as of the time of the representation, we conclude that defendant was afforded meaningful representation (see Baldi, 54 NY2d at 147; People v Reed, 199 AD3d 1486, 1487-1488 [4th Dept 2021], lv denied 38 NY3d 930 [2022]; People v Swift, 195 AD3d 1496, 1499 [4th Dept 2021], lv denied 37 NY3d 1030 [2021]; People v Warren, 186 AD2d 1024, 1024 [4th Dept 1992], lv denied 81 NY2d 796 [1993]).
We have reviewed defendant's remaining contentions in appeal No. 1 concerning the trial and conclude that none requires reversal or modification of the judgment. Finally, even assuming, arguendo, that defendant's waiver of the right to appeal in appeal No. 2 is invalid and thus does not preclude our review of his challenge to the severity of the sentence in that appeal (see People v McDonell, 219 AD3d 1665, 1665 [4th Dept 2023], lv denied 40 NY3d 1081 [2023]; see generally People v Thomas, 34 NY3d 545, 564-566 [2019], cert denied — US &mdash, 140 S Ct 2634 [2020]), we nevertheless reject defendant's contention in both appeals that his sentences are unduly harsh and severe.
Entered: November 15, 2024
Ann Dillon Flynn
Clerk of the Court